[No. B030093. Second Dist., Div. Two. June 24, 1988.]

MARTHA JOHNSON et al., Plaintiffs and Appellants, v.
CONTINENTAL INSURANCE COMPANIES et al., Defendants and
Respondents.

COUNSEL

Jack Milton Janis and Todd W. Goodman for Plaintiffs and Appellants.

Shield & Smith and Maxine J. Calatrello for Defendants and Respondents.

OPINION

**FUKUTO, J.**—Martha and Charles Johnson (Johnson) appeal from the trial court's grant of summary judgment in favor of The Continental Insurance Companies.

On June 3, 1983, Martha Johnson sustained injuries when the truck she was driving rolled over, causing a propane stove within the vehicle to explode. Johnson's passengers, Beverly Swaton, Edward Swaton, and Thomas Parrish, and passerby, James Esswein, were also injured.

At the time of the accident, Johnson was insured by Continental. Johnson's three passengers and Esswein, the passerby, submitted claims against Johnson for liability payments under the terms of the Continental policy.

On July 6, 1983, Johnson's attorney made a written demand for settlement on behalf of claimants Beverly and Edward Swaton. He advised Continental that he was "*authorized* by the claimants to extend an offer of settlement for *policy limits in the sum of $50,000.00* under [the] policy . . . issued by the Continental Insurance Company." (Italics added.) He attached a copy of the policy declaration page to the correspondence. Within two weeks after receipt of the demand, Continental paid out its full primary liability coverage policy limit of $50,000 to the four claimants, with Beverly Swaton receiving approximately $47,900 due to the severity of her injuries.

On February, 3, 1984, approximately six months after Continental settled the four claims, Johnson, and Beverly and Edward Swaton filed suit against Ford Motor Company, the manufacturer of Johnson's truck, Tires Buy Mark, the retailer of the truck's wheels, Theresa Hernandez, a passenger in another vehicle involved in the accident, and various other defendants for products liability, negligence, loss of consortium and negligent infliction of emotional distress.

On April 12, 1984, Tires Buy Mark filed a cross-complaint for indemnity against its codefendants and Johnson. On May 4, 1984, Hernandez filed a cross-complaint for apportionment of fault, indemnity and declaratory relief against her codefendants and Johnson.

On April 23, 1984, Johnson's attorney demanded that Continental provide Johnson's defense in the Tires Buy Mark cross-complaint. On May 2, 1984, a Continental adjuster obtained an extension of time to respond to the cross-complaint. On May 7, 1984, Johnson's attorney demanded that Continental provide Johnson's defense in the Hernandez cross-complaint. Continental declined, contending that its duty to defend ended at the time the $50,000 policy liability limits were paid out to the claimants. Continental provided Johnson's attorney with a copy of that section of Johnson's policy containing Continental's "duty to defend limitation" together with copies of the drafts issued to the four claimants as proof of the exhaustion of the policy limit of coverage. Following receipt of this correspondence, Johnson's attorney made at least two additional demands that Continental provide Johnson's defense, allegedly based on his belief that the "policy limits" had not been paid in full. Continental continued to refuse Johnson's defense demands.

Thereafter, Johnson filed a complaint for declaratory relief, fraud, and various other causes of action against Continental and other defendants seeking a determination that Continental was obligated to defend Johnson against the cross-complaints. Continental filed a motion for summary judgment contending that any duty to defend Johnson ended at the time Continental paid out its liability policy limit in the amount of $50,000. In granting the motion, the court found the policy's language to be conspicuous, plain and clear. The court noted that California has yet to decide the issue of whether the duty to defend ends with the payment of policy limits. The court concluded, however, that there is no clear reason why an insurer cannot insulate itself from the duty to defend once policy limits are paid out in those cases where the insured suffers no prejudice. Johnson appeals.

Johnson's contentions are threefold. First, the policy language limiting Continental's duty to defend its insured is unclear and ambiguous. Second, even if the policy language is "unambiguous" in the sense of being precise, the pertinent provision is "hidden" within the policy since it is neither highlighted nor properly placed. Third, even if the limiting language of the policy is clear, unambiguous and conspicuous, Continental, as a matter of law, is obligated to defend an insured even where the policy limits have been paid to a personal injury claimant.

■ The question of whether policy language is ambiguous is one of law. A reviewing court is required to make an independent determination, looking to the words of the policy and considering the language therein in accordance with its plain and ordinary sense. (*Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564 [218 Cal.Rptr. 407]; *Boogaert* v. *Occidental Life Ins. Co.* (1983) 150 Cal.App.3d 875 [198 Cal.Rptr. 357]).

Policy language establishing Continental's duty to defend is found on page 24 of a 33-page policy. Subheading G under "Part 4: LIABILITY" reads as follows: "G. IF YOU HAVE A CLAIM . . . [¶] 3. Defending Claims and Lawsuits [¶] If a claim is made, we will defend the claim or lawsuit. The claim must be covered by this policy. We will defend the claim or lawsuit even if the claim or lawsuit proves to be groundless, false or fraudulent. In defending a claim or suit, we may conduct any investigations we consider necessary. We may make any settlements we consider advisable. [¶] However, we are not obligated to: [¶] (a) pay any claim or judgment; or [¶] (b) defend any claim or lawsuit; [¶] when our payments have reached your Limit of Coverage."

This language refers the insured to that section of the policy entitled, "Limits of Coverage" which is located on the declaration (first) page of the policy. Four different categories of coverage are noted under the "Limits of Coverage" heading: damage-to-property coverage in the amount of $123,000, liability coverage in the amount of $50,000, medical payment coverage in the amount of $1,000 per person, and uninsured and underinsured motorists coverage in the amount of $50,000.

■ According to Johnson, the foregoing language is unclear and ambiguous since the term "Limits of Coverage" can be interpreted to refer to the medical coverage, property damage coverage, liability coverage, or to some combination of these coverages. We disagree. The language here is precise, placing the insured on notice that Continental's duty to defend would end when payments made by Continental totaled to $50,000, the amount of liability coverage. The language limiting Continental's duty to defend is found only under "Part 4: LIABILITY," and specifically refers the insured to the policy's "Limits of Coverage." The Declaration page of the policy clearly lists the policy limit of coverage applicable to "Part 4: LIABILITY," as $50,000.00. Only the "liability" coverage pertains to claims made by others against the insured and establishes a "duty to defend" such claims. No other coverage includes language regarding a "duty to defend." The absence of such language is reasonable since "liability" coverage is the only coverage which applies to those claims made against the insured requiring a defense. Neither the words themselves nor the arrangement of the language is likely to mislead those purchasing insurance. Continental has met its burden of phrasing the provision limiting its duty to defend in clear and unmistakable language. (*State Farm Mut. Auto Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 201-202 [110 Cal.Rptr. 1, 514 P.2d 953].) "Despite the strong authority mandating construction of ambiguous language in an insurance contract in favor of the insured [citations], it is clear that '[s]ome actual or apparent ambiguity must be present before the rule comes into play [citations].'" (*Hackethal* v. *National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1109 [234 Cal.Rptr. 853].) Here, the policy's "duty to defend" language is

unambiguous, plain and clear. We are not inclined to create an ambiguity where none exists. ▪ Thus, we consider whether, as Johnson contends, the policy provision is inconspicuous.

Johnson relies on *Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709 [193 Cal.Rptr. 632], and *Gross* v. *Lloyds of London Ins. Co.* (1984) 121 Wis.2d 78 [358 N.W.2d 266] in support of the contention that the language, to be conspicuous, must be properly located within the policy and highlighted in such a manner as to attract the insured's attention. Both *Ponder* and *Gross* are readily distinguishable from the facts of the instant case.

In *Ponder,* the appellate court reversed a summary judgment in favor of Blue Cross. After paying benefits to the insured for treatment of her "temporomandibular joint syndrome," Blue Cross later denied payments for further treatment on the basis that the policy did not cover treatment of that particular ailment. The *Ponder* court concluded that the policy language providing the exclusion was not conspicuous since the exclusionary language was "hidden" under a provision entitled "Dental Care" and the subheading "Dental Care Services." The court noted that the ordinary meaning of the words contained within these headings do not encompass the joint condition purportedly excluded. The court also observed that the term "temporomandibular joint syndrome" is a technical medical term which has meaning primarily for health professionals and is not comprehensible to the average health insurance purchaser. Additionally, the page upon which the provision appeared had no less than 2,056 words, in fine print, as well as 17 numbers and 54 letters designating headings and subheadings. The court noted that this "density of verbiage" created a special burden on Blue Cross to "highlight exclusions" which an ordinary insured might not expect to be in a health insurance contract.

In the instant case, we are not faced with "technical language," but rather with language which is easily understood by a person with average intelligence and experience. (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739 [161 Cal.Rptr. 322].) The language limiting Continental's duty to defend is, unlike *Ponder,* appropriately placed. It is located in that section of the policy entitled, "LIABILITY," under the bold-letter heading, "G. IF YOU HAVE A CLAIM," and then under the more explicit, boldfaced subheading, "3. Defending Claims and Lawsuits." Continental's placement of the language in this section is understandable, since liability coverage is the only coverage which applies to those claims made against the insured requiring a defense. Lastly, the provision is not hidden within a "densely packed" page. The page containing the limiting language has approximately 75 percent fewer words than does the page found in the *Ponder* case, is divided into two, rather than three columns, and the language itself is highlighted by

additional spacing between the lines which makes it "stand out" from the rest of the "Defending Claims and Lawsuits" section.

In Gross v. *Lloyds of London Ins. Co., supra,* 121 Wis.2d 78 [358 N.W.2d 266], the Wisconsin Supreme Court was faced with a liability insurance policy renewal which included a provision, substantially different from the previous policy, which specifically terminated the insurer's duty to defend the insured once the policy liability limits had been "exhausted by payments of judgments or settlements." The insured did not receive the policy renewal containing the new exclusionary language until after he was involved in an accident. The new exclusionary provision had been "added" to the end of an existing sentence in the previous policy and was not "highlighted" in any way so as to put the insured on notice of the change with respect to the insurer's duty to defend. The insurer, after investigating the accident and finding that the claimant's damages greatly exceeded the insured's liability policy limits, immediately attempted to settle with the claimant for the policy limit amount. The claimant refused and filed suit. The insurer then successfully petitioned the court to allow it to pay its policy limit to the court relieving it of any further obligation to defend its insured. The appellate court affirmed and the insured appealed.

In reversing the lower court, the *Gross* majority found that an insurer may relieve itself of its duty to defend its insureds by tendering the policy limits, but only if the insured has been given clear notice of the insurer's intent to do so by exclusionary language "highlighted in the policy . . . by means of conspicuous print, . . ." (*Gross v. Lloyds of London Ins. Co., supra,* 121 Wis.2d at p. 89 [358 N.W.2d at p. 271].)

The *Gross* court's decision turned on the fact that the insured, who had recently renewed his insurance policy, had not been notified of the "tendered by settlement" language which had been added into the policy. Because the insured had not received a copy of the new policy at the time the accident occurred, the court held that the insured could not be bound by the newly added provision. Here, there is no dispute that Johnson received a copy of her policy prior to the time of the accident, and thus was on notice of the limits contained within the policy, including the limitation placed on Continental's duty to defend.

We conclude that the policy language limiting Continental's duty to defend is highlighted in the policy by means of conspicuous print in such a manner that Johnson was given clear notice of the insurer's intent to relieve itself of the duty to defend upon exhaustion of the policy liability limits.

■ Johnson acknowledges that California has yet to rule on the issue of whether an insurer must continue to defend claims that are proper under the substantive provisions of the policy after the monetary limits of the

policy have been reached. (*Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App.3d 791 [129 Cal.Rptr. 47].) She contends, however, that we should adopt the reasoning found in *Gross* v. *Lloyds of London Ins. Co., supra,* 121 Wis.2d 78 [358 N.W.2d at p. 266], *Conway* v. *Country Cas. Ins. Co.* (1981) 97 Ill.App.3d 768 [423 N.E.2d 559], and *Davis* v. *Travelers Indem. Co. of America* (11th Cir. 1986) 800 F.2d 1050 and hold that Continental's duty to defend continued after exhaustion of the policy liability limits. Continental, on the other hand, contends that the better rule is stated in *Lumbermen's Mut. Casualty Co.* v. *McCarthy* (1939) 90 N.H. 320 [8 A.2d 750, 126 A.L.R. 894], which holds that the duty to defend ends when the policy limits are tendered, assuming no prejudice attaches to the insured.[1]

In *Gross* v. *Lloyds of London Ins. Co., supra,* 121 Wis.2d 78 [358 N.W.2d 266], the insurer, after its investigation determined that the claim against the insured would far exceed the $100,000 policy limits, attempted to settle with the claimants for the policy limit. The claimants refused and filed an $11,000,000 suit against the insured and others. Thereafter, the insurer attempted to tender the $100,000 policy limit with the court in order to relieve itself of defending the insured and thus negating potential liability payments in excess of the policy limits. In *Conway,* the insurer reimbursed a claimant for expenditures made as a direct result of her injuries. These payments were made from the insured's policy liability coverage of $10,000. Subsequently, the insurer settled with the claimant for the full $10,000

---

[1] In *Lumbermen's Mut. Casualty Co.* v. *McCarthy, supra,* 90 N.H. 320 [8 A.2d 750], a minor received personal injuries as a result of the negligent operation of an automobile by the insured. The minor's father brought an action against the insured to recover for those injuries on behalf of his son. He simultaneously brought an action against the insured on his own behalf to recover for the loss occasioned to him personally by reason of the injuries to his son. The actions were tried together and resulted in a jury verdict in favor of the minor and his father. On appeal, judgment for the minor was upheld and a new trial ordered in the action of the father. Thereafter, the insurance company paid the full limit of its coverage for bodily injuries in satisfaction of the minor's judgment. After making this payment, the insurer notified its insured, that it had discharged its obligations under the policy and refused further defense of the action brought by the father. Upon the insured's refusal to hire his own counsel, the insurer sought a determination of whether it was under any obligation under its policy of liability insurance to further defend the action. The New Hampshire Supreme Court construed the policy as obligating the insurer to pay the liability of the insured up to the policy limits, and in addition thereto, to pay those items of expense which it had definitely assumed. It also had the duty to either settle or conduct the defense of actions against the insured. Upon payment of policy limits, however, its duty to defend ceased and the further defense of any action pending thereafter had to be conducted and controlled by the insured.

The court qualified this holding by stating that "this does not necessarily mean that the insurer may elect to pay the full limit of its coverage to the insured and thereby cast upon his shoulders the full burden of investigation, settlement or defense from the beginning . . . [nor] may the insurer abandon its defense of a claim within the terms of its policy in mid course and under circumstances which are prejudicial to the rights of the insured." (*Lumbermen's Mut. Casualty Co.* v. *McCarthy, supra,* 90 N.H. at pp. 323-324 [8 A.2d at p. 752].)

policy limit amount. However, the claimant did not release the insured from personal liability, and continued to pursue a personal injury suit filed against the insured prior to the claimant's settlement for the policy limit. The insurer, with knowledge of the pending suit, took the position that its duty to defend had been discharged at the time it tendered the policy liability limits.

In both *Gross* and *Conway,* the insurer's tendering of the policy limit amounts during pending litigation involving the insured was an act designed to artificially exhaust policy limits in order to avoid excess liability payment. Under these conditions, the courts held that the insurer's duty to defend the insured was not discharged. Here, however, Continental tendered the policy limit amount at a time when there was no litigation pending against the insured. Continental received four claims against Johnson as a result of the accident. After a demand by the Johnson's attorney that Continental pay out "policy limits in the sum of $50,000.00," Continental settled the four claims in a timely manner. Some six months after Continental settled the four claims, Johnson, along with two of the original claimants, filed an action sounding in products liability prompting certain defendants to initiate cross-complaints. Although the filing of the cross-complaints may have been foreseeable, Johnson cannot contend that they were pending at the time the policy limit was tendered by Continental. Continental's actions in paying out its policy liability limits can hardly be viewed as an artificial exhaustion of policy limits in order to avoid excess liability payments.

The third case relied upon by Johnson, *Davis* v. *Travelers Indem. Co. of America, supra,* 800 F.2d 1050, is inapplicable. In *Davis,* two individuals were injured in a collision with a vehicle owned by the City of Port St. Joe, Florida. The injured parties and an additional third party filed suit against the city and the city's insurer, seeking compensation for injuries sustained in the collision. The injured parties obtained a judgment in the amount of approximately $3 million. They then filed a second suit against the city's insurer claiming that the insurer had engaged in conduct *during the course of the earlier case* which violated Florida's Unfair Insurance Trade Practices Act and caused the injured parties emotional distress. In holding that the third parties had not successfully stated a cause of action for intentional infliction of emotional distress, the court explained that the insurer's duties were owed to the insured, not to third parties. In explaining the concept of the insurer's duty to its insured, the court made the broad statement that "Payment of policy proceeds did not extinguish the duty to defend." (*Id.* at p. 1053.) This statement cannot, however, be taken out of context. The *Davis* case does not involve a policy containing a provision limiting the insurer's duty to defend after tender of policy limits. Nor does it involve an attempt on the part of the insurer to avoid its duty to defend its insured.

The conduct complained of by the third party claimants involved the insurance company's aggressive defense of its insured by vigorously asserting certain defenses available to its insured, allegedly in violation of Florida's insurance law.

The cases cited by Johnson rely principally on the idea that an insurer, after being apprised of pending litigation against its insured, may not walk away from its duty to defend its insured by tendering its policy limits. As noted above, these cases are inapplicable to the instant facts since the insurer here tendered its policy limits in response to the demand of its insured prior to the initiation of litigation arising from the accident.

We do not construe Continental's conduct as abandoning Johnson in midcourse or placing upon her shoulders the full burden of investigation, settlement, or defense. The language limiting Continental's duty to defend is unambiguous, clear, explicit and conspicuous. Johnson's attorney demanded settlement on behalf of two of the claimants for "policy limits in the sum of $50,000.00." Continental responded by settling all four claims filed under Johnson's policy. It was not until some eight months later that Johnson demanded that Continental defend against the cross-complaints filed as a result of the initiation of Johnson's products liability action. Under the facts of this case, Continental's refusal to accede to Johnson's demand was proper.[2]

Judgment is affirmed.

Roth, P. J., and Gates, J., concurred.

---

[2] Johnson's two remaining contentions are without merit and we find it unnecessary to address them in view of our holding here. We do not construe Continental's adjuster's act of obtaining an extension of the time to respond to Johnson's cross-complaints as Continental undertaking Johnson's defense in those actions. Nor do we find that Continental waived policy limits by paying out $50,000 in liability coverage limits and $1,000 in medical coverage limits.