**People of The State of CALIFORNIA and The City of Lodi, Plaintiffs,**

**v.**

**RANDTRON, a dissolved California corporation, et al.   Defendants.**

**No.  CIV–S–98–0620 DFL DAD.**

United States District Court,
E.D. California.

Oct. 12, 1999.

**1266**

Michael C. Donovan, Envision Law Group, San Mateo, CA, Cecelia C. Fusich, Fulcrum Environmental Law, Hayward, CA, Randall A. Hays, City of Lodi Attorney's Office, for People of the State of California, City of Lodi, Plaintiffs.

Brooks M. Beard, Morrison & Foerster LP, San Francisco, CA, for Intervenor American Stores Properties, Inc. and Intervenor Lucky Stores Inc.

Patrick L. Finley, Ivonne Prieto, Glynn and Finley, Walnut Creek, CA, for Intervenor Holz Rubber Company, Inc.

Stephen G. Schrey, Lillick and Charles, San Francisco, CA, for Amicus, First State Insurance Co.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

The City of Lodi and the People of the State of California (hereinafter collectively referred to as "Lodi") brought this environmental action involving groundwater pollution against defendant Randtron and its predecessors and successors in interest. After Lodi entered into a settlement agreement with Randtron and Wausau Insurance Co, one of Randtron's primary insurers, the court issued a Consent Decree and Final Judgment incorporating the agreement. Lodi subsequently brought suit in state court against Randtron in an effort to reach its other insurance assets, and now brings this action seeking declaratory relief and an injunction barring Randtron from asserting a res judicata defense in state court.

### I.

Randtron is a dissolved California corporation whose principal remaining asset is a portfolio of primary and excess insurance policies. Under California law, it may be sued "to the extent of its undistributed assets, including, without limitation, any insurance assets held by the corporation." Cal. Corp.Code § 2011(a)(1)(A).

In the original federal action against Randtron, Lodi asserted claims under the Resource Conservation and Recovery Act ("RCRA"), the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), and state causes of action for public nuisance and violations of the Municipal Environmental Response and Liability Ordinance ("MERLO"). (First Am. Compl. ¶¶ 161–226.) Lodi, Randtron, and Wausau ultimately reached a settlement that was incorporated into the court's Second Amended Final Consent Decree and Final Judgment (hereinafter referred to as the "Consent Decree"). Randtron was represented throughout this process by independent counsel appointed by Wausau. In exchange for the exhaustion of two policies issued by Wausau, Lodi released (1) all of its claims against Randtron's officers and shareholders not covered by other insurance policies; and (2)

its claims against Randtron, but only to the extent Randtron and its predecessor and successor firms "were protected from liability by ... [ the two policies] issued by Employers Insurance of Wausau A Mutual Company." (*Id.* at 10.) The Consent Decree was entered after public notice and hearing.[1]

In the meantime, Lodi moved forward with administrative remedies under MERLO. Prior to the filing of Lodi's federal suit, Lodi's MERLO Enforcing Officer issued an initial order charging Randtron with creating a public nuisance by contaminating the City's groundwater. (Pl.'s Req. Jud. Notice Ex. D.) The order required Randtron to investigate the extent of the groundwater contamination, implement a plan for remediating the contamination, and reimburse Lodi for any costs incurred abating the nuisance. (*Id.* at 26–50.) Randtron tendered its defense to Wausau and Granite State Insurance Company, one of its excess insurers. Wausau accepted the defense, but did not contest the initial order by filing an administrative appeal as provided by the MERLO, *see* 8 Lodi Mun.Code § 8.24.060(B). Granite State declined to defend Randtron, but filed special appearance objections before an administrative hearing officer appointed by Lodi.

On November 5, 1998, the enforcing officer issued a revised order. (Pl.'s Req. Jud. Notice Ex. G.) Because Randtron failed to object timely to the order, it became final under the MERLO. *See* 8 Lodi Mun.Code § 8.24.060(A)(1). Lodi subsequently filed a civil action in state court to enforce the administrative order—an action that Lodi characterizes as "a prerequisite to the People and the City's contemplated judgment creditor action against Randtron's insurers under section 11580 of the California Insurance Code." (Pl.'s Mem. of P. & A. at 5.) [2]

Through counsel hired by Granite State, Randtron demurred to Lodi's state court complaint, interposing a res judicata defense. (Def.'s Dem. at 7.) According to Randtron, the state court action is based upon the same environmental injury to Lodi addressed in the federal action and settlement, involves the same parties, and advances the same cause of action under MERLO. (*Id.* at 9.) Lodi now asks this court to enjoin Randtron from asserting a res judicata defense in the state court action on the ground that the Consent Decree contemplated that Lodi would pur-

---

1. On April 10, 1998, the court signed an order allowing notice of the proposed settlement and consent decree by publication in two newspapers. Publication precipitated numerous comments from interested parties, including Lucky Stores and Holz Rubber Company. (Exs. to Pl.'s and Def.'s Joint Summ. and Resp. to Public Comments.) Lucky Stores and Holz later moved to intervene, (Lucky Stores' Mot. to Intervene; Holz Joinder in Mot. to Intervene), and the court permitted the intervention on three issues: whether the trusteeship proposed by the decree was appropriate; whether the two Wausau policies would be exhausted by the settlement; and whether the court should impose a contribution bar, (July 28, 1988 Hr'g Tr. at 161–2,) On July 27, 1998 and September 28, 1998, the Court held hearings on the proposed consent decree, addressing the issues raised by the intervenors in the notice and comment process, as well as several additional objections and questions raised by other entities. Fol-

lowing the hearings, the court received and considered additional letter briefs from the parties and intervenors. On December 4, 1998 the court issued an order addressing the remaining principal objections to the proposed consent decree, specifying the required amendments to the decree, and directing the parties to lodge a revised consent decree with the court. The final Consent Decree was entered on April 1, 1999. Despite having notice of the proposed settlement and consent decree, Granite State never moved to intervene. Moreover, although counsel for Granite State was present at the July 28, 1998 hearing, he voiced no objections.

2. In addition, Lodi is currently in negotiations with Wausau over nine policies that remain unexhausted and were not addressed in the Consent Decree. (Amicus Brief of First State Ins. Co. and New England Reins. Corp. Ex. D.)

sue Randtron's other insurance assets in further litigation. The state court has stayed Randtron's state action pending resolution of this motion.

## II.

Lodi and Randtron contest two principal issues: (1) whether the court has the power to determine the preclusive effect of the Consent Decree and grant equitable relief enforcing its ruling; and (2) whether the court should vacate rather than enforce the Consent Decree because it is fundamentally unfair. On both of these issues, Randtron takes positions that are at odds with positions it took in the litigation leading to the Consent Decree. This change of posture reflects Randtron's status as a dissolved corporation whose principal remaining assets are its insurance policies. In the prior litigation, the only corporate assets at stake were the two policies issued by Wausau, and Randtron was represented by Wausau-appointed counsel. In the present litigation, Randtron is represented by counsel hired by Granite State, who is defending Randtron in the state court action brought by Lodi to recover the company's unexhausted insurance assets. The former Randtron pursued the limited settlement incorporated in the Consent Decree; the latter now seeks either to circumvent the settlement's terms or to vacate it as unfair. But the court need not determine which of these Randtrons is the "real" Randtron; they are both legal fictions fronting for different insurance companies.[3] Even assuming that present counsel represents Randtron and its best interests, rather than Granite State and its interests, Randtron's new positions on both questions before the court lack merit.

## A.

Lodi argues that the court has the power to determine the preclusive effect of the Consent Decree and to grant equitable relief barring Randtron from asserting a res judicata defense in state court. In response, Randtron maintains that the court lacks subject matter jurisdiction over Lodi's motion, and that even if subject matter jurisdiction exists, the Anti–Injunction Act, 28 U.S.C. § 2283, precludes the relief sought by Lodi.

### 1. Subject Matter Jurisdiction

■ A federal district court has the power to enforce the terms of a settlement agreement if the agreement either (1) is incorporated into the court's final judgment; or (2) provides expressly for continuing jurisdiction over disputes arising out of the settlement. See Flanagan v. Arnaiz, 143 F.3d 540, 544 (9th Cir.1998) (explaining that a basis for subject matter jurisdiction "may be furnished by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order") (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994)); O'Connor v. Colvin, 70 F.3d 530, 533 (9th Cir.1995) (explaining that there is no subject matter jurisdiction over a suit to enforce a settlement agreement where "the Dismissal neither expressly reserves jurisdiction nor incorporates the terms of the settlement agreement") (citation and internal quotations omitted). In this case, the settlement agreement is incorporated into the court's final judgment, and states expressly that "[t]he Court shall retain full jurisdiction over the Settling Parties, Wausau, the Trust, and this Consent Decree for purposes of ensuring compliance with its terms and provisions and adjudicating, either directly or by Order of Reference,

---

**3.** There is one difference, however. Whereas the settlement negotiated by Randtron's counsel in the Consent Decree action provided important continuing protection to the officers and shareholders of Randtron, who otherwise faced the specter of personal liability, current counsel seeks to protect only Randtron's other insurers with no discernable benefit to any officer, director, shareholder, or other person connected to Randtron.

any and all disputes arising hereunder." (Consent Decree at 27.)

■ The parties contest whether Lodi's suit seeks enforcement of the Consent Decree. Randtron argues that because the Consent Decree does not contain a clause expressly prohibiting Randtron from asserting the defense of res judicata in a subsequent suit, Lodi's action does not seek compliance with the terms of the Consent Decree. The plain text of the Consent Decree indicates, however, that the parties contemplate future actions by Lodi against Randtron in which Randtron's other insurance would be at issue. By its terms, the Consent Decree settles plaintiffs' claims against Randtron only to the extent of the coverage provided by the two Wausau policies; it does not cover "any claims or rights (including those asserted in this action) that the Plaintiffs, [the State or Lodi], may have now, or may in the future, acquire against Randtron ... to the extent Randtron ... [is] protected from the liability asserted in those claims by any insurance not exhausted by this Consent Decree." (*Id.* at 22.) The Decree further provides that "nothing in this Consent Decree shall abrogate in any manner, claims or rights the People of the State of California or the City of Lodi has now or may acquire against any Settling Defendants for which they are protected by insurance policies other than the combined single limits liability coverage of the Wausau policies exhausted by this Consent Decree." (*Id.* at 25.)

Lodi's state court complaint seeks to recover insurance assets left unexhausted by the Consent Decree and is, therefore, consistent with the terms of the Decree. Conversely, Randtron's attempt to thwart the state court action by interposing a res judicata defense is inconsistent with the provisions in the Consent Decree permitting future litigation between the parties. Indeed, the court would not have approved

the Consent Decree or made a finding that the settlement was reached in good faith had the settlement freed Randtron and all of its insurers from any further liability upon the exhaustion of only the two Wausau policies. Lodi's present federal court action reasonably can be viewed, then, as an action to stop Randtron from breaching the terms of the Consent Decree.

■ Even assuming that the court does not have subject matter jurisdiction on the basis of the Consent Decree, subject matter jurisdiction exists under the All Writs Act, 28 U.S.C. § 1651, which authorizes federal district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Act has been interpreted to "empower[] a district court to issue injunctions to enforce judgments and to reinforce the effects of the doctrines of res judicata and collateral estoppel." *Charlton v. Charlton,* 841 F.2d 988, 989 (9th Cir.1988); *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 985 F.2d 1067, 1069 (11th Cir.1993) (explaining that the Act "gives federal courts broad injunctive powers to protect their own judgments"). Were Randtron to succeed in state court it would destroy the Consent Decree and achieve immunity for its other insurers, a result the court would not have permitted as part of the Consent Decree. Because Lodi brings this action to ensure that a judgment of this court is given proper preclusive effect in state court, this action falls within the scope of the Act.

### 2. The Anti–Injunction Act

The more difficult question presented in this case is whether Lodi's suit is barred by the Anti–Injunction Act, which prohibits federal district courts from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in

aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

■ Lodi maintains that this action falls within the third exception, commonly known as the "relitigation exception." [4] (Pls.' Mem. of P. & A. at 2.) This exception "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court," *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 1690, 100 L.Ed.2d 127 (1988), and attaches "if res judicata would bar the state court proceedings," *Blalock Eddy Ranch v. MCI Telecomm. Corp.*, 982 F.2d 371, 375 (9th Cir.1992); *see also Western Systems, Inc. v. Ulloa*, 958 F.2d 864, 871–72 (9th Cir.1992).[5] Lodi invokes the relitigation exception in order to bar the state court from reconsidering the limitations on claim preclusion set forth in the Consent Decree, and thereby pave the way for its suit to recover Randtron's unexhausted insurance assets. Randtron argues that the relitigation exception is inapplicable here for two reasons: (1) a settlement may not limit its own preclusive effect; and (2)

even if it could, the Consent Decree does not contemplate future suits by Lodi against Randtron.

■ As to Randtron's first argument, the Ninth Circuit has observed that "[a] settlement can limit the scope of the preclusive effect of a dismissal with prejudice by its terms." *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 911 (9th Cir.1998); *see also Kelly*, 985 F.2d at 1069 ("A party can waive res judicata by consenting to split the claim into two suits.") (citing Restatement (Second) of Judgments S 26 cmt. a); *International Union of Operating Eng'rs v. Karr*, 994 F.2d 1426, 1432 (9th Cir.1993).

Randtron's second argument is equally without merit. According to Randtron, the Consent Decree only permits Lodi to bring subsequent actions against Randtron if its claims are separate and distinct from those asserted in the federal action. In its demurrer to Lodi's state court complaint, Randtron maintains that "this action is a textbook example of a party improperly attempting to split its claims against another party among multiple lawsuits," (Am. Dem. at 7:12–13), and that "[t]he

---

4. Lodi does not contest that the injunction it seeks against Randtron is tantamount to "an injunction to stay proceedings in a state court." The Anti–Injunction Act "applies even where, as here, the injunction would technically be directed at a litigant instead of the state court proceeding itself." *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1377–78 (9th Cir.1997); *see also In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 144 (3d Cir.1998) (Becker, J.) ("This prohibition applies whether [the plaintiffs] seek to enjoin the parties to the action or the state court itself."); *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). Although Lodi formally seeks to enjoin Randtron from asserting a res judicata defense, such a decree would have the same effect as an injunction barring the state court from entertaining Randtron's res judicata defense.

5. Although Lodi seeks declaratory relief as well as injunctive relief, the Anti–Injunction

Act applies to declaratory relief if it would have the same effect as an injunction. *See Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir.1988) (holding that "if an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction") (citation and internal quotations omitted); *Thiokol Chem. Corp. v. Burlington Indus.*, 448 F.2d 1328, 1332 (3d Cir. 1971) (explaining that the Anti–Injunction Act's "analogical extension to prohibit declaratory judgments is justified in situations where the underlying policy against unseemly interference with proper state litigation applies to both injunctions and declaratory relief"). In this case, an order declaring the proper preclusive scope of the Consent Decree would be equivalent to an injunction barring the state court from considering Randtron's res judicata defense, since the state court would be obligated to give the declaratory judgment preclusive effect.

Consent Decree resolved all of the City's claims against Randtron, once and for all," (*Id.* at 7:14–15.) These intrepid assertions are directly contrary to the plain text of the Consent Decree. The Decree releases Lodi's claims against Randtron only to the extent that they exhaust the two Wausau policies, and otherwise reserves Lodi's claims regardless of whether or not they are distinct from the claims asserted in its federal suit. The Decree provides, for example, that "[t]he Releases and Covenants Not to Sue . . . shall not apply to . . . [a]ny claims or rights (*including those asserted in this action* ), that the Plaintiff . . . may have now, or may in the future acquire, against Randtron" to the extent it is protected by unexhausted policies. (Consent Decree at 22 (emphasis added).) The Decree elsewhere states that "this settlement is intended to effectuate settlement of *only* those Matters Covered for which [Randtron and its predecessor and successor firms] are protected from liability by the limits of liability coverage provided by the [two Wausau policies]." (*Id.* at 10 (emphasis in original).)

Randtron's assertion of res judicata in the state court proceedings is inconsistent with the limitations on claim preclusion established in the Consent Decree. It is a transparent effort by Randtron's other insurers to huddle behind the fiction of "Randtron" in hopes of a preclusion windfall. Although it is most unlikely that any court would be persuaded by Randtron's res judicata defense, were the state court to accept Randtron's position and hold that the Consent Decree precluded Lodi's suit, it would frustrate the Decree's purpose of settling Lodi's claims only to the extent of the coverage provided by the two Wausau policies. And in the unlikely event that the state court rendered a decision against Lodi on the res judicata question and entered judgment against it, Lodi would be unable to seek further relief from this court, since the state court ruling would be entitled to respect under the Full Faith & Credit Act. *See Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 524, 106 S.Ct. 768, 772, 88 L.Ed.2d 877 (1986) (holding that "[o]nce the state court has finally rejected a claim of res judicata, then the Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine the preclusive effect of the state court's decision").

■■■■ The strongest argument against applying the relitigation exception and granting Lodi equitable relief is that to do so would violate principles of federalism. The Supreme Court invoked federalism and comity in holding that the relitigation exception does not apply once the state court has ruled on the preclusive effect of a prior federal order. *See Parsons Steel,* 474 U.S. at 523, 524, 106 S.Ct. at 771, 772 (limiting the relitigation exception "to those situations in which the state court has not yet ruled on the merits of the res judicata issue," citing "the important values of federalism and comity embodied in the Full Faith and Credit Act"); *see also Kaempfer v. Brown,* 684 F.Supp. 319, 324 n. 13 (D.D.C.1988) (observing that the *Parsons* Court struck a balance between two competing policy concerns— "[n]amely, that federal court decisions not be relitigated and that state court decisions be equally respected [under the Full Faith and Credit Act]"). Here, however, the state court has stayed its case so that the federal court may decide the preclusive effect of its own judgment. In these circumstances, the federal court shows no disrespect to the state court by undertaking to interpret its own judgment. In an era of scarce judicial resources, particularly on the state level, it is no favor to the state court to afflict it with additional work simply to show respect for its wisdom and processes.[6]

■■■■ Randtron counters that this case does not present the classic situation in-

---

6. Even if the state court had not issued a stay

pending this court's interpretation of the Con-

volving the relitigation exception, in which the federal court issues an injunction halting the state court action at issue. *See, e.g. Flanagan,* 143 F.3d at 545–46 (invoking the relitigation exception to uphold the district court's order enjoining a state action barred by res judicata). It is true that this case is somewhat unusual because application of the relitigation exception has the effect of facilitating litigation in the state court. But, as discussed above, the equitable relief sought by Lodi falls within the scope of the relitigation exception because the limited preclusive effect of the settlement has already been determined by the federal court in the Consent Decree and is a critical aspect of the Decree. An

order barring Randtron from interposing a res judicata defense in state court "protect[s] or effectuate[s]" the judgment of this court, 28 U.S.C. § 2283, and is therefore proper here.[7]

## II.

■ Randtron argues that even if this case falls within the scope of the relitigation exception, the court should refuse to grant Lodi equitable relief because the Consent Decree is unfair. Randtron urges the court instead to vacate or modify the Consent Decree on the grounds that the Decree (1) discharged Wausau's duty to defend while permitting future litigation

---

sent Decree, principles of federalism would not preclude application of the relitigation exception. To be sure, federalism prohibits a federal court from issuing an injunction based upon the assumption that a state court will fail or refuse to honor the preclusive effect of a federal judgment. *See Browning Debenture Holders' Comm. v. DASA Corp.,* 605 F.2d 35, 40 (2d Cir.1978) (recognizing that "comity requires respect for the ability of the state courts to decide the issue of res judicata properly") (internal quotations omitted). But if respect for the ability of state courts to decide preclusion issues fairly were sufficient, without more, to defeat application of the relitigation exception, the exception would never apply. *See Harper Plastics, Inc. v. Amoco Chem. Corp.,* 657 F.2d 939, 947 (7th Cir.1981) ("While § 2283 may be grounded in principles of comity and federalism, those principles do not supercede the doctrine of res judicata. The relitigation exception to § 2283 recognizes that much.") (citation omitted). Accordingly, a district court may properly act to protect its judgment where, as here, the relitigation exception is otherwise applicable, and the only federalism concern present is the possible disruption of state court litigation resulting from the issuance of equitable relief. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1025 (9th Cir.1998) (upholding the district court's injunction under the Anti–Injunction Act and explaining that "[a]lthough comity requires federal courts to exercise extreme caution in interfering with state litigation, federal courts have the power to do so when their jurisdiction is threatened").

7. Lodi does not contend that its action falls within the second exception to the Anti–Injunction Act, which authorizes a federal dis-

trict court to issue an injunction "in aid of its jurisdiction." 28 U.S.C. § 2283. A strong argument can be made, however, that this exception applies here as well. Although injunctions in aid of jurisdiction have generally been limited to cases in which a federal court's in rem jurisdiction is threatened by a state court action or where "the state proceeding threatens the continuing superintendence by a federal court, such as in a school desegregation case," *Texas v. United States,* 837 F.2d 184, 186 n. 4 (5th Cir.1988) (Higginbotham, J.); *see generally* Richard H. Fallon et al., *Hart & Wechsler's The Federal Courts and the Federal System,* 1205 (4th ed.1996) (noting that the exception for injunctions "in aid of jurisdiction" has been applied principally to cases involving federal in rem jurisdiction, federal removal jurisdiction, and federal class action lawsuits), the exception has also been applied when a state court action threatens to undermine federal court jurisdiction expressly provided in a settlement agreement, *see Arnaiz,* 143 F.3d at 545 (applying the second exception on the ground that "[w]here the district court expressly retains jurisdiction to enforce a settlement agreement, and to resolve disputes that may arise under it, litigation in state court would pose a significant risk of frustrating the district court's jurisdiction over the consent judgment") (citation and internal quotations omitted); *see also Battle v. Liberty Nat'l Life Ins. Co.,* 877 F.2d 877, 880–882 (11th Cir.1989) (applying the "in aid of jurisdiction" and relitigation exceptions to bar state court adjudication of claims previously decided in a federal class action suit resulting in settlement).

against Randtron; (2) improvidently relinquished Randtron's right to seek contribution; and (3) undermined Randtron's ability to secure excess liability coverage. These contentions lack merit.

Randtron argues that Wausau should not have been permitted to offer its two policies issued to Randtron and "walk[ ] away from its duty to defend while the insured is still at risk." (Def.'s Mem. of P. & A. in Opp'n to Mot. Decl. J. at 23.) In support of this position, Randtron cites *Johnson v. Continental Ins. Cos.*, 202 Cal. App.3d 477, 248 Cal.Rptr. 412 (1988), which suggests in dicta that "an insurer, after being apprised of pending litigation against its insured, may not walk away from its duty to defend its insured by tendering its policy limits." *Id.* at 486, 248 Cal.Rptr. at 417. But Wausau did not abandon Randtron in any relevant sense when it settled Lodi's federal suit. Randtron is a dissolved corporation, and the only Randtron-owned assets at stake in the federal litigation were the two policies issued by Wausau. Accordingly, once those policies were exhausted by the Consent Decree and Final Judgment, Randtron no longer had any interests to protect for purposes of the federal litigation. While the Consent Decree permits Lodi to bring future actions against Randtron to recover other insurance assets, it does not absolve insurers of those assets—including Wausau if there are additional Wausau policies—of any duty to defend they might owe Randtron.

■ Randtron also challenges the Consent Decree on the theory that it assigns Randtron's right of contribution to Lodi. According to Randtron, this assignment leaves Randtron and its non-party insurers vulnerable to liability for the entire cost of Lodi's cleanup project with no recourse to contribution from other responsible parties. However, no party to the federal litigation takes this view of the Consent Decree, unless Randtron qua Granite State may be viewed as a party to the Consent Decree. At oral argument, counsel for Lodi agreed that the Consent Decree was intended to assign only the contribution rights that arose by virtue of Wausau's payments to Lodi on the two specified policies. The court will entertain a motion to amend the Consent Decree if an amendment is necessary to clarify the decree in this respect.[8]

Finally, Randtron qua Granite State boldly argues that the Consent Decree's failure to address other primary coverage potentially available to Randtron has frustrated Randtron's efforts to obtain coverage from its excess insurers. Randtron points out that its excess carriers have taken the position that their duty to provide coverage does not attach until all primary coverage has been exhausted, and that this precondition has not yet been met because nine potentially applicable Wausau policies remain unexhausted. Whatever the merits of the excess insurers' position, the possibility of further coverage from Wausau does not vitiate the Consent Decree, since the Decree in no way bars Randtron from seeking coverage under the additional Wausau policies or any other primary policies in state court.

In short, the Consent Decree is not unfair. It exhausts two Wausau policies and to that extent reduces Randtron's liability to Lodi. It provides protection to the individual officers and shareholders of Rand-

---

**8.** Under California law, "[t]he right of contribution accrues at the time of payment." *Jackson v. Lacy*, 37 Cal.App.2d 551, 560, 100 P.2d 313 (1940) (citation and internal quotations omitted); *see also Borba Farms, Inc. v. Acheson*, 197 Cal.App.3d 597, 602, 242 Cal. Rptr. 880, 882 (1988) (explaining that the plaintiff's "right of contribution only came into existence upon his actual payment [to the judgment creditor]"); Cal.Code Civ. P. 875(c) (providing that a "right of contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof"). Accordingly, the only contribution rights Randtron had at the time it assigned them to Lodi were those deriving from Wausau's payments under the two exhausted policies.

tron. It provides Lodi with an immediate infusion of funds with which to pursue the cleanup of the site without limiting its ability to pursue other insurance assets that Randtron may have.

## III.

Randtron cannot escape the preclusion limitations to which it agreed in this forum by interposing a res judicata defense in a subsequent proceeding. More to the point, Randtron's other insurers cannot escape any exposure they might have by arguing on Randtron's ostensible behalf that the limited settlement incorporated in the Consent Decree is actually a resolution of "all of the City's claims against Randtron once and for all." This is not what Randtron bargained for in the settlement and Consent Decree. Nor would the court have approved such a settlement.

The court grants Lodi's motion for declaratory relief, and holds that the Consent Decree releases Lodi's claims against Randtron only to the extent those claims were covered by the two Wausau policies specified in the Decree. The Decree does not bar Lodi from asserting the same substantive claims against Randtron to the extent it possesses other insurance assets.

IT IS SO ORDERED.