# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2761

No. 12-3179

_____

In re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation

------------------------------

Oscar Ortega

*Movant - Appellant*

Toney Abbott; Bonnie Abbott; Alberto Aguilar; Irma Aguilar; Steven A. Archangel; Alejandro Camarena; Monica Camarena; Evelyn Candido; Luis Carillo; John Parrett; Jaime Cubides; Marta Cubides; Verna Culp; Louise Ellis; Rosario Lopez; Monica McCulloch; Daniel Saenz; Angel Morales; Cassandra Smith; Micaela Negrete; Luis Zapata; Todd O'Neal; Sylvia O'Neal; Roberto Perez; Henry Pimentel; Gerardo Rivera; Gregorio Sanchez; Marisol Sanchez; Laura Spindola; Wilber Torres; Kenneth Wright; Debra Wright; Raul Zelaya; Jose Zul; Lucila Zul

*Objectors - Appellants*

John McGregor; Helen McGregor; Charles Perrone; Jay Livermont; Mary Livermont; Steve Spina; Kim Spina; Carl Fielstra, III; Krystal Fielstra; Paul Roth; Lynn Roth, on behalf of themselves and all others similarly situated

*Plaintiffs - Appellees*

v.

Uponor, Inc.; Radiant Technology, Inc.

*Defendants - Appellees*

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 15, 2013
Filed: June 7, 2013

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Several class action lawsuits were commenced against Uponor, Inc. and Radiant Technology, Inc. in 2009, alleging that they had manufactured and distributed leaky brass plumbing fittings. The cases were consolidated by the judicial panel on multidistrict litigation, and after months of negotiation the parties reached a settlement agreement in November 2011. The district court[1] then certified the proposed classes for settlement purposes, granted preliminary approval of the settlement terms, and ordered notice to class members on January 19, 2012. In May 2012 California resident Oscar Ortega moved to intervene and to decertify the classes, arguing that his interests were not represented because the parties had failed to assert a viable claim existing under California law. A group of California residents including Ortega separately objected to the settlement alleging similar deficiencies. After denying all motions and objections, the district court granted final approval of the settlement. Ortega and the other objectors appeal. We affirm.

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

I.

Radiant and Uponor are affiliated companies which sold brass fittings for household and commercial plumbing. In May 2009 residents of the state of Washington commenced a putative class action against Radiant and Uponor, asserting claims for consumer fraud, deceptive and unlawful trade practices, false advertising, negligence, failure to warn, misrepresentation, and breach of warranty. They alleged that "[t]he failures of the Uponor and [Radiant] brass insert fittings have and will in the future cause water leaks," which "have and will in turn cause extensive damage to other property including the homes and personal property of the owners." In the past repair costs for leaks were typically between $4,000 and $7,000, but in some instances they had approached $100,000 for a single leak.

Additional putative class actions were filed which alleged similar claims and underlying facts, and in May 2011 the claims were consolidated in a multidistrict litigation (MDL) proceeding in the District of Minnesota with class representatives from California, North Carolina, Oregon, South Dakota, and Washington. After consolidation the parties continued negotiating under the supervision of a magistrate judge[2] who participated in several settlement conferences with class counsel, Uponor and Radiant representatives, and the companies' insurance providers. Following months of supervised negotiation, the parties reached a settlement agreement in November 2011.

Early settlement discussions had contemplated the certification of a single settlement class, but shortly before a settlement was agreed on the parties agreed to separate the plaintiffs into two classes. The first class, which the district court

---

[2]The Honorable Jeffrey J. Keyes, United States Magistrate Judge for the District of Minnesota.

referred to as the "Soggy Plaintiffs," consisted of class members whose plumbing systems had already leaked. A separate class of "Cloggy Plaintiffs" covered class members whose brass fittings had not yet leaked. The proposed settlement agreement stipulated that after two leaks, soggy plaintiffs would be entitled to have their entire plumbing system replaced at Uponor and Radiant's expense. Cloggy plaintiffs who had demonstrated "by way of a flow test that a differential in water flow . . . of more than 50% [exists] between the hot and cold lines" would also be entitled to replacement of their brass fittings, and if that proved insufficient, to a new plumbing system. An independent administrator would be appointed by the district court to resolve all claims.

The settlement agreement released from liability Uponor, Radiant, all affiliated entities, and "sales agents and distributors who purchased, advised, recommended, sold, and/or installed" the defective brass fittings. The settlement terms indicated that the release was intentionally "broad and expansive" and would "release . . . all damages, burden, obligation or liability of any sort, . . . which might otherwise have been made in connection with any claim relating to" the brass fittings.

Radiant and Uponor also agreed to provide attorney fees, costs, and expenses, and to fund the nearly $1 million cost of providing notice to class members. Notice was to be provided by direct mailings to known owners of Uponor and Radiant brass fittings, direct mailings to home insurers, advertisements in consumer magazines targeting homeowners, a national press release, and a settlement website. Every state attorney general would also receive a CD containing pertinent case and notice documents.

The parties moved the district court to certify the classes for settlement purposes and requested preliminary approval of the settlement agreement and the proposed form of notice. The district court determined that the classes complied with Federal Rule of Civil Procedure 23, that the settlement terms were fair, and that the

proposed notice satisfied the requirements of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715. It accordingly granted the motions and scheduled a final fairness hearing, which would occur after all class members had been notified of the settlement and given the opportunity to opt out.

According to a declaration provided by the designer of the notice plan, "70.02% of homeowners" and "virtually all homeowner insurance providers" received notice of the settlement, and each class member was "exposed to Notice an average of 2.09 times." Several homeowners wrote to class counsel with questions, but only two groups opted out of the settlement. The groups that opted out had been litigating a similar case against Radiant and Uponor in Nevada and preferred to continue that litigation.

In May 2012, California resident Oscar Ortega moved for intervention of right under Federal Rule of Civil Procedure 24(a)(2). He claimed that he had not received "any notice whatsoever" concerning the class action, and argued that his interests were "not adequately represented by the existing parties" because they had failed to assert a viable claim under California's Right of Repair Act, Cal. Civ. Code § 896(a)(15). That statute imposes liability on a "general contractor, subcontractor, material supplier, individual product manufacturer, or design professional" for any "[p]lumbing lines" which "corrode so as to impede [their] useful life." Id. Since the statute does not require proof of a leak or differential water flow to recover damages, Ortega contended that it affords Californians a broader remedy than that available under the settlement.

Ortega simultaneously moved for a protective order authorizing "disclosure of settlements of similar individuals with similar claims who are not in the class," which he asserted was necessary to determine "whether the proposed settlement is 'fair, reasonable, and adequate.'" He also moved to decertify the classes, arguing that the representatives were inadequate because all were "soggy" plaintiffs, the settlement

claims were not typical because they omitted the cause of action under California law, and the "subclass to which he ha[d] been denigrated" was not represented by independent counsel.

The district court denied each of Ortega's motions. It first determined that Ortega's motion to intervene had been untimely, and it then dismissed his other motions for lack of standing. The district court reasoned that in "similar scenarios" this circuit has found "a lack of standing when a party's motion to intervene has been denied." The district court's denial of Ortega's intervenor motion therefore precluded him from filing additional motions.

Three days after Ortega's motions were denied, twenty six California residents including Ortega filed objections to the proposed settlement. Their objections were similar to those raised in Ortega's earlier motions, including that the unique rights of California homeowners were not protected, notice had been defective, and the rights released by the settlement agreement were overbroad. The settlement class moved for final approval of the class action settlement, and a fairness hearing was held on June 26, 2012. The district court determined that the objections lacked merit and issued an order granting final approval of the settlement.

Ortega and the other objectors filed a notice of appeal. Following a motion by the settlement class, the district court imposed an appeal bond of $170,000 pursuant to Federal Rule of Appellate Procedure 7. Ortega and the objectors then appealed that order, contending that the appeal bond was excessive. We agreed and entered an order staying "the requirement that Appellants post an appeal bond in excess of $25,000." No. 12-2761/3179 (8th Cir. Sept. 28, 2012) (order granting in part motion for stay).[3]

---

[3]The objectors argue on appeal that the district court abused its discretion in imposing an excessive appeal bond, but they indicate that they are "satisfied with this

On appeal, Ortega and the other objectors first argue that the district court abused its discretion in granting final approval of the settlement. They reassert their previous objections that notice had been insufficient, that Californian class members had been wrongfully denied independent legal counsel, and that the final settlement omitted a cause of action under California law, released parties from liability "without compensation," and contained "severe defects[] which violate class members' due process rights." Ortega also contends that the district court abused its discretion in denying his motion to intervene.

II.

A.

We generally review for abuse of discretion a "district court's decision to approve [a] global settlement over" objections. In re BankAmerica Corp. Sec. Litig., 350 F.3d 747, 752 (8th Cir. 2003). In certain circumstances our court has applied "heightened[] attention" to class action requirements which are "designed to protect absentees . . . in the settlement context," such as when the parties have "agreed upon a class definition and a settlement before formally initiating litigation." Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1145 (8th Cir. 1999) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)). We decline to apply a heightened standard in this case, however, because the two settlement classes were created shortly before settlement and after the parties had "engaged in . . . extensive discovery and preparation for trial." Id. We instead review for abuse of discretion.

Court's ruling on this issue." The settlement class does not challenge this court's previous decision to stay the appeal bond imposed by the district court. Since the objectors have "receive[d] all that [they have] sought," we do not consider their argument here. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333 (1980).

A district court may approve a class action settlement only after determining that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making that determination a district court should consider (1) "the merits of the plaintiff's case[] weighed against the terms of the settlement," (2) "the defendant's financial condition," (3) "the complexity and expense of further litigation," and (4) "the amount of opposition to the settlement." Van Horn v. Trickey, 840 F.2d 604, 607 (8th Cir. 1988). A settlement agreement is "presumptively valid." Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1, 921 F.2d 1371, 1391 (8th Cir. 1990).

The district court in this case considered each of the four Van Horn factors in turn. On the first factor—the merits of the plaintiffs' case—the district court found that the settlement terms were "generous, offering both Soggy and Cloggy Plaintiffs the only conceivable remedies they could expect." It noted that the settlement did not impose any aggregate or per claim caps and that additional expenses did not diminish class members' recovery. The district court next determined that the second factor—Radiant and Uponor's financial condition—also favored approval since the companies had ceased operations in 2005 and class counsel had considered "insurance coverage, the effect of previous claims paid, and . . . coverage defenses" in negotiating settlement terms. The third factor—complexity and expense—also weighed in favor of approval because "class actions place an enormous burden of costs and expense upon the parties." Schmidt v. Fuller Brush Co., 527 F.2d 532, 535 (8th Cir. 1975) (per curiam). Turning finally to any opposition to the settlement, the district court noted that only twenty six individuals out of a class of 30,000 had objected to the settlement, which amounted to "only token opposition." It finally reviewed the objections raised and determined that they "lack[ed] merit" because notice had been adequate and the class representatives' claims were sufficiently typical of the settlement class. Since each of the Van Horn factors favored approval, the district court entered an order on July 9, 2012 granting final approval of the settlement.

-8-

Without discussing the Van Horn factors, the objectors contend on appeal that the district court committed a variety of errors in approving the settlement. According to the objectors, the alleged errors demonstrate that California residents were inadequately represented in the settlement classes and that notice of the class action settlement was defective.

The objectors first argue that the class representatives' claims were not "typical" because they omitted a cause of action available under California Civil Code § 896(a)(15). That statute allows California residents to seek recovery without demonstrating a leak or differential water pressure. We conclude the objectors have failed to demonstrate inadequate representation based on the California statute. Class representatives need not share identical interests with every class member, but only "common objectives and legal and factual positions." Petrovic, 200 F.3d at 1148 (citation omitted). All class members here share the common objective of recovering costs associated with replacing defective brass plumbing fittings in their homes.

The objectors have also failed to demonstrate that a legal remedy would be available under the California statute which is not afforded by the settlement terms. Both the statute and the settlement entitle a claimant to replacement costs. They assert that the statute imposes a lower burden of proof than that incorporated into the settlement since it requires evidence of mere "corro[sion]" rather than a leak or change in water pressure, but they fail to describe how the two differ. It is also "questionable" whether the statute or its burden of proof "appl[y] to class actions," Kingsbury v. U.S. Greenfiber, LLC, No. CV 08-00151 AHM, 2009 WL 2997389, at *7 n.9 (C.D. Cal. Sept. 14, 2009), because an introductory clause of the statute lists "class actions" among the "causes of action . . . not covered by this part," Cal. Civ. Code § 931. The objectors finally have provided no reason why they could not have simply opted out of the class and instead chosen to pursue their claims separately under California law. Since "there is no indication that [the class representatives'] interest was antagonistic to" the objectors' interest, DeBoer v. Mellon Mortg. Co., 64

F.3d 1171, 1175 (8th Cir. 1995), we agree with the district court that the representatives are adequate.

The objectors next argue that the notice provided to state attorneys general and settlement class members did not comply with CAFA requirements. We review de novo the legal requirements of CAFA. Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 822 (8th Cir. 2010). With respect to the attorneys general, the objectors contend that the cover letter was defective because it indicated only that "[i]t is not feasible to provide the names of all class members in each state." They allege that such language fell short of the CAFA requirement that notice be provided to attorneys general with either the names of class members who reside in the state "if feasible," or if not feasible "a reasonable estimate of the number of class members residing" in the state, citing 28 U.S.C. § 1715(b)(7)(A)–(B). Since the cover letter allegedly had not provided a reasonable estimate of the class members, the objectors contend that notice was defective.

We decline to reverse based on this technicality. In the only case cited by the objectors to support their position, a district court concluded that notice had been insufficient because the state attorneys general had received notice only ten days before the settlement hearing compared with the ninety days required by CAFA, True v. Am. Honda Motor Co., 749 F. Supp. 2d 1052, 1083 (C.D. Cal. 2010), and twenty five attorneys general had objected after receiving the notice, id. at 1059. In this case, by contrast, each state attorney general timely received a cover letter and CD containing the latest complaint, settlement agreement, preliminary approval order, notice documents, and plan of notice distribution. No attorney general voiced any objection to the settlement terms.

Congress enacted the CAFA notice requirement to "provide a check on inequitable settlements," and it emphasized that the statute was "not intended to allow settlement class members to walk away from an approved settlement based on a

technical noncompliance." S. Rep. No. 109-14 (2005), 2005 WL 627977, at \*35. We conclude that the notice provided to the state attorneys general in this case meaningfully complied with CAFA, and that the "merely technical or formal" error does not warrant reversal here. Williams v. Great S. Lumber Co., 277 U.S. 19, 26 (1928).

With respect to the settlement class members, the objectors argue that notice was defective because it did not adequately describe the scope of liability releases. We disagree. Valid notice of a settlement agreement "may consist of a very general description" of settlement terms. Grunin v. Int'l House of Pancakes, 513 F.2d 114, 122 (8th Cir. 1975). In this case each class member received a notice stating that "[t]he specific rights you are giving up are called Released Claims. The Released Claims are described in necessary and accurate detail in paragraphs 73 to 79 of the Settlement Agreement." The notice provided a link to the settlement website, a description of the opt out procedure, and a toll free number to pose questions to the claims administrator. The notice was neither confusing nor misleading as to the release of liability under the settlement agreement.

The objectors finally contend that the settlement contained an overbroad release clause which would "release the vast universe of separate and distinct claims . . . that do not arise out of the same factual predicate." This argument lacks merit since the settlement specifically allows class members to pursue other claims unrelated to leaky brass fittings.

The objectors have not challenged any of the district court's findings with respect to the relevant Van Horn factors, which are amply supported by the record. Documents produced during discovery and deposition testimony also reveal that class members responded positively to the settlement terms, that the class representatives considered Radiant and Uponor's financial condition in negotiating settlement terms, and that "only a handful of class members objected to the

-11-

settlement." DeBoer, 64 F.3d at 1178.  In addition, there is no dispute that reopening settlement negotiations at this stage would burden all parties.  We conclude that the district court did not abuse its discretion in granting final approval of the proposed settlement.

B.

Turning next to Ortega's motion to intervene, our court generally reviews de novo "whether or not a person is entitled to intervention as a matter of right."  Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 998 (8th Cir. 1993). When a district court denies a motion to intervene based on untimeliness, however, we review that decision for abuse of discretion.  ACLU of Minn. v. Tarek ibn Ziyad Acad., 643 F.3d 1088, 1093 (8th Cir. 2011).  A district court abuses its discretion when it "rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions."  Oglala Sioux Tribe v. C & W Enters., Inc., 542 F.3d 224, 229 (8th Cir. 2008) (citation omitted).

To determine whether a motion to intervene is timely, we have instructed district courts to consider "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties."  ACLU of Minn., 643 F.3d at 1094.  Motions to intervene should be construed "liberally . . . in favor of the proposed intervenors," but "[a]t the same time, a district court's exercise of discretion under the rule should not lightly be overturned."  United States v. Ritchie Special Credit Invs., Ltd., 620 F.3d 824, 831 (8th Cir. 2010) (citations omitted).

Here, the district court discussed the four Ziyad timeliness factors and concluded that they "mitigate[d] against permitting intervention."  On the first and fourth factors, the district court determined that the "advanced stage" of litigation and

-12-

the "substantial time and resources expended by all parties" meant that granting Ortega's motion to intervene would be "extremely prejudicial to many parties' interests." It observed that the motion had been filed three years after the case began and four months after preliminary approval of the settlement, and that Ortega's motion thus amounted to a "ninth-inning-with-two-outs" intervention attempt. The district court also concluded that the second and third factors of knowledge and reason for delay were neutral as to timeliness. Weighing all the factors, the district court therefore determined that Ortega's motion was untimely and should be denied. The court also found it important that Ortega had failed to argue that his motion had been timely.

Ortega argues on appeal that the district court erred by overlooking the severe prejudice he would suffer as a result of the denial of his motion to intervene. He argues again that the settlement classes do not adequately represent his interests, and contends that he has met the "minimal burden" of establishing insufficient representation, citing Mille Lacs Band, 989 F.2d at 999. As discussed above, however, Ortega has failed to show inadequate representation based on the California statute. We have also presumed that representation is adequate when the individual "attempting to intervene [is a] member[] of a class already involved in the litigation," Jenkins ex rel. Jenkins v. Missouri, 78 F.3d 1270, 1275 (8th Cir. 1996), and there is no dispute that Ortega is a class member here. Ortega finally has not pointed to any way in which the district court erred in considering the timeliness factors in this case. We conclude that the district court did not abuse its discretion in denying Ortega's motion to intervene as untimely.

## IV.

Accordingly, we affirm the district court's final approval of the class action settlement and its denial of Ortega's motion to intervene.

_____

-13-