FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, *Plaintiff-Appellee*, v. INTELLIGENDER, LLC, *Defendant-Appellant*. | No. 13-56806 D.C. No. 2:10-cv-04210-ABC-VBK OPINION |

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
August 4, 2014—Pasadena, California

Filed November 7, 2014

Before: Stephen Reinhardt, Kim McLane Wardlaw,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Wardlaw

# SUMMARY[*]

### Class Action Fairness Act / Res Judicata

The panel affirmed the district court's denial of IntelliGender, LLC's motion to enjoin an entire enforcement action brought by the State of California under the State's Unfair Competition and False Advertising Laws, but reversed the denial of IntelliGender's motion to enjoin only the State's restitution claims in the State's action seeking relief for some individuals who were bound by a Class Action Fairness Act class action settlement concerning a nationwide class of disappointed purchasers of the IntelliGender Prediction Test, which purported to predict a fetus's gender.

The panel held that the district court correctly denied IntelliGender's motion to enjoin the State's enforcement action in its entirety. The panel held that a Class Action Fairness Act ("CAFA") class action, though approved by the district court, did not act as res judicata against the State in its sovereign capacity, even though many of the same claims were included in both the CAFA action and the enforcement action. The panel further held that because the State action was brought on behalf of the people, it implicated the public's interest as well as private interests, and therefore the remedial provisions swept much more deeply.

The panel held that the district court erred in denying IntelliGender's motion to enjoin the State's claims for restitution because the State's action, insofar as it sought

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

restitution for individual members of the settlement class, could be enjoined under the district court's continuing jurisdiction to enforce and administer the class action settlement. The panel held that the State, having chosen not to participate in the CAFA action, was precluded from seeking the same relief sought in the CAFA class action by operation of the principles of res judicata.

## COUNSEL

Douglas J. Collodel (argued), Sedgwick LLP, Los Angeles, California; Paul Jeffrey Riehle, Nora Wetzel, Sedgwick LLP, San Francisco, California, for Defendant-Appellant.

Kristine A. Lorenz (argued), San Diego City Attorney's Office, San Diego, California, for Plaintiff-Appellee.

**OPINION**

WARDLAW, Circuit Judge:

This case sits squarely at the intersection of the Class Action Fairness Act ("CAFA") and a sovereign's right to bring an enforcement action to protect its citizens from unscrupulous, fraudulent, or harmful business practices. The district court approved a CAFA settlement between a nationwide certified class of disappointed purchasers of the IntelliGender Prediction Test and defendant IntelliGender, which sold and advertised the Test as an accurate predictor of a fetus's gender using the mother's urine sample. Subsequently, the People of the State of California filed an enforcement action against IntelliGender under the State's Unfair Competition and False Advertising Laws, largely based on the same claims asserted in the CAFA class action. The State seeks civil penalties, injunctive relief, and restitution for some individuals who were bound by the CAFA class action settlement. IntelliGender initially moved for an injunction against the State's entire action, which the district court denied. IntelliGender next moved for an injunction against only the State's restitution claims, positing that the State's action undermines the finality of the CAFA settlement, which the court also denied. Because the State's action is designed to vindicate broader governmental interests than the class action, the settlement agreement in the CAFA class action does not create privity sufficient to warrant enjoining the entire action. While we recognize the State's strong interest in protecting its citizens through enforcement

actions, we note that CAFA expressly provides that the defendant in a class action must provide notice to the appropriate state official of any proposed settlement, presumably so that the state may comment upon or object to the settlement's approval, if the State believes the terms inadequately protect state citizens. Here, the appropriate State officials were notified, but they chose not to participate in the settlement approval process. The State cannot now obtain a duplicate recovery in the form of restitution on behalf of those individual citizens who are bound by the bargained for restitution in the CAFA class settlement. Accordingly we affirm the district court's denial of the motion to enjoin the entire State action, but reverse its denial of the motion to enjoin only restitution claims.

I.

A.

Earlier this year, the Supreme Court explained:

> Congress enacted CAFA in order to amend the procedures that apply to consideration of interstate class actions. In doing so, Congress recognized that class action lawsuits are an important and valuable part of the legal system. It was concerned, however, that certain requirements of federal diversity jurisdiction, 28 U.S.C. § 1332, had functioned to keep cases of national importance in state courts rather than federal courts.

*Miss. ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 739 (2014) (citations omitted) (internal quotation marks

omitted).    The Senate stated its concerns more bluntly: "[M]ost class actions are currently adjudicated in state courts, where the governing rules are applied inconsistently (frequently in a manner that contravenes basic fairness and due process considerations) and where there is often inadequate supervision over litigation procedures and proposed settlements." S. Rep. No. 109-14, at 4 (2005), 2005 WL 627977, at *5.   In an effort to curb these perceived abuses, Congress loosened the requirements for diversity jurisdiction by adding 28 U.S.C. § 1332(d)(2), which "replaced the ordinary requirement of complete diversity of citizenship among all plaintiffs and defendants, with a requirement of minimal diversity." *AU Optronics*, 134 S. Ct. at 740 (citation omitted).   Under CAFA, therefore, a federal court may exercise jurisdiction so long as "any member of a class of plaintiffs is a citizen of a State different from any defendant" and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2).

Complementing the expansion of federal jurisdiction to ensure uniformity and fairness is CAFA's class action settlement notice requirement, 28 U.S.C. § 1715, which was intended to "provide a check against inequitable settlements." S. Rep. No. 109-14, at 35 (2005), 2005 WL 627977, at *34; *see In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1064–65 (8th Cir. 2013).   Section 1715 requires notice of a proposed settlement to be served on the "appropriate" federal and state officials—typically the Attorney General of the United States and "the person in the State who has the primary regulatory or supervisory

responsibility with respect to the defendant." 28 U.S.C. § 1715(a). In addition, § 1715 prohibits a court from ordering final approval of a proposed settlement until 90 days after the appropriate government officials were notified. *Id.* § 1715(d). The statute is equally clear that it shall not "be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials." *Id.* § 1715(f). These requirements are intended to give states a role in ensuring that citizens are equitably compensated in class action settlements, but states are free not to participate, leaving that task to the courts, which ultimately retain discretion to approve or disapprove any settlement, regardless of a state's intervention.

Aside from securing compensation for citizens, state enforcement actions serve other interests such as protecting citizens from future harm, and these interests might not be served by intervention in ongoing settlement proceedings. Thus, although the role of potential objector to a proposed settlement under CAFA serves important interests, a sovereign's ability to bring enforcement actions against private parties that violate the law serves equally if not more important public interests. Nothing in CAFA's notification requirements could be read to interfere with the power of states or the federal government to bring enforcement actions.

B.

California's Business and Professions Code prohibits false advertising under § 17500[1] and creates causes of action for unfair competition under §§ 17203-04.[2]

California's unfair competition law (UCL) (§ 17200 et seq.) defines "unfair competition"

---

[1] Section 17500 provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."

[2] Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

to mean and include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law(§ 17500 et seq.) ]." (§ 17200.) The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.

*Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002); *see Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005) ("The goal of both the UCL and the [false advertising law (FAL)] is the protection of consumers."); *see also Hauk v. JP Morgan Chase Bank*, 552 F.3d 1114, 1122 (9th Cir. 2009) (noting that the "broad scope" of California's UCL "allows for violations of other laws to be treated as unfair competition that is independently actionable" (internal quotation marks omitted)).

Under the enforcement provisions of the UCL, public prosecutors as well as any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition" may bring an action. Cal. Bus. & Prof. Code § 17204. Section 17535 allows those same parties to bring suit for violations of the FAL.[3] But not all suits are created equal. A public prosecutor bringing an action under the UCL may seek civil penalties, permanent injunctive relief, and resitution, whereas suits brought by private individuals are

---

[3] "Business and Professions Code section 17535, which pertains to certain forms of misleading advertising, provides essentially the same remedies as the UCL under Business and Professions Code section 17203." *State v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 1306 n.9 (2005).

limited to injunctive relief and restitution. *Id.* § 17203 (allowing courts to make such orders as "may be necessary to restore to any person in interest any money or property . . . which may have been acquired by means of such unfair competition");[4] *id.* § 17204 (allowing private individuals or public prosecutors to seek injunctive relief); *id.* § 17206 (allowing only public prosecutors to seek civil penalties); *see Kasky*, 45 P.3d at 249 ("In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are generally limited to injunctive relief and restitution." (internal quotation marks omitted)). Indeed, "[t]he voters restricted private enforcement of the UCL in 2004, by approving Proposition 64 . . . . Accordingly, to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition." *Yanting Zhang v. Superior Court*, 304 P.3d 163, 168 (Cal. 2013). Despite the importance of private enforcement of the UCL and FAL, such private suits do not and cannot substitute for public enforcement actions, which serve as a far greater deterrent and thus a greater protection. *See People v. Pac. Land Research Co.*, 569 P.2d 125, 129 (1977) ("[A]n action by the People lacks the fundamental attributes of a consumer class action filed by a private party. The Attorney General or other governmental official who files the action is ordinarily not a member of the class, his role as a protector of the public may be inconsistent with the welfare of the class . . . .").

---

[4] Section 17203 permits either a public prosecutor or an individual to seek restitution, so long as the restitution sought goes to the individual who lost money or property as a result of the unfair competition. *See, e.g.*, *Rubio v. RushCard*, No. No. 1:13–cv–1470 AWI–GSA, 2014 WL 2718804 (E.D. Cal., June 16, 2014).

C.

IntelliGender, LLC owns and manufactures the IntelliGender Prediction Test.  It advertises on its website: "IntelliGender's Gender Prediction Test is an affordable, simple-to-use urine test that provides immediate gender results in the privacy and comfort of the home.  In minutes, the IntelliGender Gender Prediction Test indicates your gender result based upon an easy to read color match.  Green indicates boy and orange indicates girl!" INTELLIGENDER, http://www.intelligender.com (last visited Aug. 13, 2014). On June 7, 2010, Julie Gram filed a nationwide class action against IntelliGender in federal district court, invoking CAFA's jurisdiction under 28 U.S.C. § 1332(D)(2)(A).  On April 23, 2012, the district court issued an order granting final approval in *Gram v. IntelliGender* to a class action settlement between IntelliGender and a certified class composed of "all individuals who personally purchased a Test between November 1, 2006 and January 31, 2011, in the United States and personally used the Test."   The court found that IntelliGender provided notice of the proposed settlement to the appropriate state and federal officials pursuant to 28 U.S.C. § 1715, that the ninety day period for comment or objection had elapsed, and that no objections or comments were received.  The *Gram* complaint alleged numerous causes of action, including violations of California's UCL and FAL, as well as the California Consumers Legal Remedies Act.   Through the settlement agreement, IntelliGender agreed to pay $10.00 for each approved claim submitted by a class member and to make a *cy pres* donation of $40,000 worth of product.  In addition, it agreed to change its website's advertising as well as the Test's product insert

and box.[5]  To receive the $10.00 restitution payment, a class member must submit a valid claim form, which requires her to swear under penalty of perjury that the Test result was inaccurate as to her child's gender.

D.

On November 9, 2012, the People of the State of California, by and through the San Diego City Attorney, filed an action in California state court against IntelliGender, LLC and its owners for violations of California's UCL and FAL. The State sought to "enjoin [IntelliGender] from engaging in unfair competition and untrue or misleading advertising . . . [and sought] to obtain civil penalties, restitution, and other remedies for the Defendants' violations of law."

IntelliGender removed the action to the Federal District Court for the Southern District of California.  The district court subsequently granted IntelliGender's motion to change venue to the Central District of California pursuant to 28 U.S.C. § 1404(a) over the objection of the State.  The case was assigned to Judge Audrey Collins, who had presided over the related *Gram v. IntelliGender* CAFA class action.

On August 26, 2013, IntelliGender moved in the *Gram* action for a permanent or preliminary injunction to enforce the court's final order and judgment by enjoining the State

---

[5] Changes to the product website included clarifying that the "Nobel Prize winning chemist [who] was added to the research team," was actually "a graduate student" who was merely "part of a 1996 Nobel Prize winning research team in chemistry."    INTELLIGENDER, http://www.intelligender.com/about-intelligender.html (last visited Aug. 21, 2014).  The company also agreed to add a disclaimer "that the Test is not (and is not required to be) FDA approved."

from prosecuting the enforcement action. It argued that an injunction was "necessary in aid of preserving the Court's jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651," because allowing the State's suit to go forward would undermine the ability of the district court to enforce its final order and judgment in the *Gram* class action. On September 19, 2013, the district court remanded the State's enforcement action to the Superior Court for the County of San Diego reasoning, in part, that it was brought in the State's sovereign capacity to protect its citizenry from unscrupulous business practices. The following day, the district court denied IntelliGender's request for injunctive relief against the State's enforcement action.

IntelliGender next moved in the *Gram* action for an injunction against the State's restitution claims only. IntelliGender argued that insofar as the State sought restitution on behalf of members of the settlement class, such relief should be enjoined because allowing the claims to go forward would amount to a double recovery and run afoul of the doctrine of res judicata. In short, allowing the restitution claims to proceed would undermine the finality of the class action settlement. On October 16, 2013, the district court also denied this motion.

## II.

"Whether an injunction may issue under the Anti-Injunction Act is a question of law reviewed de novo." *California v. Randtron*, 284 F.3d 969, 974 (9th Cir. 2002). If an injunction falls within the purview of the Anti-Injunction Act, then we review for abuse of discretion the district court's decision whether to grant the injunction. *Id*.

The Anti-Injunction Act, 28 U.S.C. § 2283, limits the All Writs Act by prohibiting federal courts from enjoining state court actions except in three narrow circumstances. One of these, the "relitigation exception," allows a court to issue an injunction where necessary "to protect or effectuate the federal court's judgments." *Randtron*, 284 F.3d at 974. That exception "empowers a district court to issue injunctions to enforce judgments and to reinforce the effects of the doctrines of res judicata and collateral estoppel." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (internal quotation marks omitted). "Res judicata applies when the earlier suit: (1) reached a final judgment on the merits; (2) involved the same cause of action or claim; and (3) involved identical parties or privies." *Id.* at 962.[6]

There is no doubt that the first two elements are met with respect to both of IntelliGender's motions. First, the district court entered a final judgment in the *Gram* class action. Second, the *Gram* class action included the same causes of action or claims now brought by the State of California. Specifically, the State alleges causes of action for: (1) violation of California Business and Professions Code § 17500 for untrue or misleading statements to the public about services based on the company's statements about its product, including that it has "[p]roven over 90% accurate in laboratory tests," and (2) violation of Business and Professions Code § 17200 for unfair competition based on their violation of § 17500 and commission of theft by false

---

[6] Because the case was briefed and argued both to us and the district court on the assumption that federal res judicata law controls, we decide the appeal on that basis. We reserve for future decision, however, the question whether state or federal law ultimately is applicable to the issues in question.

pretenses in violation of Penal Code §§ 484 and 532. The *Gram* class action also included claims against IntelliGender based upon California's UCL and FAL.

The third element, whether sufficient privity exists between the State and the class members to warrant the application of res judicata, is the crux of this case. *See United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (noting that the doctrine of res judicata "require[s] privity between parties"). "Privity is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Id*. (internal quotation marks omitted). And, as the Supreme Court recently cautioned, "issuing an injunction under the relitigation exception is resorting to heavy artillery. For that reason, every benefit of the doubt goes toward the state court; an injunction can issue only if preclusion is clear beyond peradventure." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375–76 (2011) (footnote omitted) (citation omitted).

A.

The district court correctly denied IntelliGender's motion to enjoin the State's enforcement action in its entirety.[7] The

---

[7] IntelliGender initially argued that this is not a State enforcement action because it was brought by the City of San Diego. IntelliGender misapprehends that it was the City of San Diego that filed the action *on behalf of the People of the State of California*, and it is therefore a state enforcement action rather than an action brought by the City for individual relief. Nonetheless, IntelliGender pursues this line of argument in its reply brief, asserting that under California Government Code § 72193 the City lacks authority to bring a lawsuit on behalf of the people of the State of California because the City's reach is limited to the local level. The clear

court reasoned that Intelligender had not met its burden of showing that the CAFA class action settlement could bind the State in its sovereign capacity, where it asserted both public and private interests. IntelliGender failed to carry that burden because it is an impossible one to bear.

In *Herman v. South Carolina National Bank*, 140 F.3d 1413 (11th Cir. 1998), the Eleventh Circuit held that the federal government's enforcement action seeking to vindicate both private and public concerns was not barred by the prior settlement of a private class action on those same claims. Relying on several Supreme Court cases, the Eleventh Circuit explained that "[t]hese ERISA cases are consistent with the well-established general principle that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests." *Id.* at 1425; *see Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (holding that giving a state court authority to adjudicate Voting Rights Act § 5 issues arising in disputes between private parties does not "frustrate the Attorney General's enforcement of the Act" because "[t]he Attorney General is not bound by the resolution of § 5 issues in cases to which he was not a party," and, more broadly, "[c]ommon notions of collateral estoppel suggest that the state proceedings similarly would not bind other interested persons who did not participate in them"). The Eleventh Circuit reasoned that Congress granted the Secretary of Labor an independent right to sue and seek redress for

---

statutory text of California Business and Professions Code § 17535, which provides, "[a]ctions for injunction under this section may be prosecuted by the Attorney General or any . . . city attorney . . . in this state in the name of the people of the State of California," precludes IntelliGender's novel argument.

ERISA violations because such plans affect the national public interest. *Herman*, 140 F.3d at 1423. As such, the Secretary's action was not barred by the actions of private plaintiffs who sought to redress individual grievances, even when the Secretary's action also sought to recoup plan losses. *Id.*; *see Wilmington Shipping Co. v. New Eng. Life Ins.*, 496 F.3d 326, 340 (4th Cir. 2007) (agreeing with "a number of our sister circuits [that] have held that, in light of the overarching national interest in ensuring the financial stability of pension plans and the inability of private plaintiffs to adequately represent this interest, the Secretary of Labor is not bound by the results reached by private litigants in ERISA suits"). We agree that a CAFA class action settlement, though approved by the district court, does not act as res judicata against the State in its sovereign capacity, even though many of the same claims are included in both actions. Because the State action is brought on behalf of the people, it implicates the public's interest as well as private interests, and therefore the remedial provisions sweep much more broadly.

For example, California Business and Professions Code § 17206(a) specifically provides that individuals who engage in unfair competition "shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation . . . ." In this action, the State requested penalties of $2,500 for "each and every untrue or misleading statement made or caused to be made by [IntelliGender] to each potential or actual consumer, as proven at trial, in an amount not less than five million dollars" pursuant to § 17536 as well as civil penalties in the amount of $2,500 for every violation of § 17200 pursuant to § 17206. Section 17204 also allows public prosecutors to seek injunctive relief, and § 17203 permits public prosecutors to seek restitution for all

individuals who purchased the product, not only those who used it and received an incorrect result.

The cases relied upon by IntelliGender for its contrary arguments actually undercut its position. In *Leon v. IDX Systems Corp.*, for example, we found privity and enjoined the Department of Labor's ("DOL") action against a company because "[w]hen the Secretary of Labor is suing for employee-specific rights of precisely the sort plaintiff has already pursued then the requisite closeness of the interests for privity is present." *Leon*, 464 F.3d at 962 (alterations omitted) (citation omitted) (internal quotation marks omitted). Leon had sued his employer after being placed on unpaid leave, alleging violations of the anti-retaliation provision of the False Claims Act, Title VII, the Americans with Disabilities Act, and state laws. *Id.* at 955. He also filed a complaint with the DOL. *Id.* After the district court dismissed all of Leon's claims with prejudice because he had "despoiled evidence," his employer moved the district court to enjoin, on res judicata grounds, the DOL's action as well. *Id.* The district court denied the motion to enjoin, and we reversed, reasoning that the district court had erred in not finding privity between Leon and the DOL. *Id.* at 961–62. Because the DOL's action arose under the whistleblower-protection provision of the Sarbanes-Oxley Act, the *only* remedies available were "individual compensatory remedies." *Id.* at 962. On that basis, we concluded that "the private nature of the remedy sought by the DOL demonstrates that the agency is in privity with Leon." *Id.* at 963. Similarly, in *Chao v. A–One Medical Services, Inc.*, 346 F.3d 908, 923 (9th Cir. 2003), we affirmed the grant of injunctive relief because the Secretary of Labor was *not* trying to "vindicate broader governmental interests by, for example, seeking an

injunction," but was instead trying to recoup plaintiff's personal economic loss.

Finally, IntelliGender's argument that the State's enforcement action should be enjoined because of its failure to object to the proposed settlement after receiving CAFA's required notice is simply incorrect. The three district court cases cited by IntelliGender in support of its position stand for little more than the proposition that the failure to object can be considered in assessing the fairness of a proposed class action settlement—precisely what the CAFA notification requirements were designed to accomplish. The notification requirement, by its own terms, does not "impose any obligations, duties, or responsibilities upon, Federal or State officials." 28 U.S.C. § 1715(f). IntelliGender's arguments to the contrary are unavailing, contradict the plain text of the statute, and would undermine CAFA's purpose.

## B.

Whether the district court erred in denying IntelliGender's motion to enjoin the State's claims for restitution is an entirely separate question. The same considerations of CAFA's purpose and the importance of state enforcement actions once again govern our analysis, but this time lead to a different result: the State's action, insofar as it seeks restitution for individual members of the *Gram* settlement class, may be enjoined under its continuing jurisdiction to enforce and administer the *Gram* class action settlement. "[I]t goes without saying that the courts can and should preclude double recovery by an individual." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (internal quotation marks omitted). To the extent that the State seeks restitution

for individual members of the *Gram* certified class, it may be enjoined from doing so.

When a government entity sues for the same relief that "plaintiff [has] already *pursued* then the requisite closeness of interests for privity is present." *Leon*, 464 F.3d at 962 (emphasis added) (citation omitted) (internal quotation marks omitted); *see also Chao*, 346 F.3d at 923 (enjoining an action by the Secretary of Labor because it sought simply to recoup plaintiff's personal economic loss rather than "vindicate broader governmental interests by, for example, seeking an injunction"). Sufficient privity exists between *Gram* class members and the State with respect to claims for restitution. The district court's suggestion that privity did not exist[8] relied upon two mistaken premises: that the individuals on whose behalf restitution was sought are different from the certified class and that the amounts sought are different. The former is factually incorrect, and the latter has no bearing on the question of privity.

In its order denying the motion to enjoin claims for restitution only, the court relied upon the fact that "the class certified in this case is limited only to those who purchased Defendant's product *and received an inaccurate result*, whereas the People are seeking restitution on behalf of *all* California purchasers of the product—regardless of the

---

[8] It is unclear whether the district court's erroneous findings led it to conclude that an injunction in this case would be barred under the Anti-Injunction Act, or whether it thought it *could* issue an injunction but chose in its discretion not to do so. For example, the district court stated both, "Defendant has not met its burden of demonstrating that an injunction is *warranted* in this case," and "the restitution claim asserted in the People's Action is different . . . such that the settlement here should not *preclude* the People's claim for restitution."

results they received from the product." This is incorrect. In its approval of the class settlement in *Gram*, the district court "certifie[d] this Action for settlement purposes as a nationwide class action on the behalf of the following: all individuals who personally *purchased* a Test between November 1, 2006 and January 31, 2011, in the United States and personally *used* the Test." While only those individuals who obtained an incorrect Test result are eligible for compensation under the terms of the settlement, this does not negate the fact that the certified class covered anyone who purchased and used the Test—substantially the same individuals for whom the State now seeks restitution. That compensation was limited to those who obtained an incorrect result is a reflection of the bargaining and compromise inherent in settling disputes. Individual *Gram* class members who bought a Test and used it but did not obtain an incorrect result remain bound by the settlement, even though they will not receive any compensation. If the State wished to secure compensation for those class members, it had an opportunity to do so by intervening after receiving notice of the proposed settlement pursuant to 18 U.S.C. § 1715(a). This is the method CAFA established for states to seek equitable compensation for class members. The State chose not to use its authority, and the settlement was approved. Compensation is res judicata.

The district court's reliance upon the different amount of restitution sought[9] in denying the motion is also misplaced. It is irrelevant for questions of privity and merely confirms

---

[9] IntelliGender settled for $10.00 per claimant who submitted a claim form swearing that she received an inaccurate result, while the State sought restitution of the full purchase price, $30.00, for every individual who purchased the test.

that the State is essentially seeking a double (or at least better) recovery.  Indeed, even the district court "agree[d]" with the State's conclusion that some individuals who received restitution in this case would be ineligible for recovery in the *Gram* action.  Moreover, as our decision in *Leon* confirms, the appropriate inquiry is not what relief was ultimately granted, but whether the government is suing for the same relief already *pursued* by the plaintiff.  464 F.3d at 962 (emphasis added).  Here, the class pursued restitution, and the government now seeks the same.  Because the requirements of *res judicata* have been met with respect to the claims for restitution, an injunction may issue under the Anti-Injunction Act.  *See Randtron*, 284 F.3d at 974 ("Whether an injunction may issue under the Anti-Injunction Act is a question of law reviewed de novo.").

"However, the fact that an injunction may issue under the Act does not mean that it must issue."  *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1377 (9th Cir. 1997).  "The decision whether to issue an injunction that does not violate the Act is reviewed for an abuse of discretion."  *Id.*; *see Randtron*, 284 F.3d at 974.  "A district court abuses its discretion when it rests its conclusions on clearly erroneous factual findings or on incorrect legal standards."  *Quackenbush*, 121 F.3d at 1377.  Although the decision to grant an injunction is discretionary, discretionary decisions of district courts must be "exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result."  *Langnes v. Green*, 282 U.S. 531, 541 (1931).

As discussed, *supra*, the district court rested its conclusion that an injunction was not warranted on a clearly

erroneous factual finding—that the classes were not the same—and a mistaken belief that the *amount* of restitution sought affects the propriety of issuing an injunction. This alone is enough to conclude that the district court abused its discretion in failing to grant the injunction. These errors are compounded, and our conviction that the district court abused its discretion strengthened, when we examine "what is right and equitable under the circumstances and the law." *Id.*

It is axiomatic that final, court-approved settlements preclude class members from seeking the same relief for the same claims a second time. "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . ." *Montana v. United States*, 440 U.S. 147, 153 (1979) (internal quotation marks omitted). Absent such a guarantee, defendants would have little incentive to agree to any settlement, and plaintiffs would be left with no leverage. As the Court explained, "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources,  and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153–54; *see Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting the same).  Allowing the State's claims for restitution to go forward in state court would undermine this central guarantee of our legal system and undercut CAFA's purpose of increasing the fairness and consistency of class action settlements.

The Court has recognized that "class actions raise special problems of relitigation," which Congress sought to address in part through passage of CAFA. *Bayer*, 131 S. Ct. at 2381. Although in *Bayer*, the Court examined the issue of relitigation of class certification,[10] the principles it espoused are applicable to other questions of relitigation. The Court noted that Congress's chosen remedy, CAFA, "does not involve departing from the usual rules of preclusion." *Id.* at 2382. Rather, CAFA functions to prohibit relitigation by "enabl[ing] defendants to remove to federal court any sizable class action involving minimal diversity of citizenship." *Id.* Once removal takes place, the consolidation of multiple overlapping suits allows one legal standard to govern the case. "Congress's decision to address the relitigation concerns associated with class actions through the mechanism of removal provides yet another reason for federal courts to adhere in this context to longstanding principles of preclusion." *Id.*

Allowing the State's claims for restitution to advance would undermine those "longstanding principles of preclusion," which we and other courts have recognized time and again under the basic rule that when the government seeks individual relief on behalf of an already defeated litigant, res judicata usually applies. *See Wright & Miller*, Fed. Prac. & Proc. Juris. § 4458.1 & nn. 26–29 (2d ed. 2014) (collecting cases and noting "class-action proceedings may preclude the government from pursuing independent

---

[10] *Bayer* also addressed a case in which the original action had been filed prior to CAFA's enactment, leading the Court to conclude: "CAFA may be cold comfort to Bayer with respect to suits like this one beginning before its enactment." 131 S. Ct. at 2382.

proceedings that seek only to win advantages for the same class").

In *In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*, No. 05-MD-1712, 2013 WL 3463503 (E.D. Pa. July 10, 2013), the district court confronted a factual situation similar to the one presented here. That court granted the defendant companies' request for an injunction to prevent the State Attorney General from seeking restitution for individuals under Pennsylvania's Consumer Protection Law. The individuals on whose behalf the Attorney General sought restitution were members of a settlement class that had already entered into an agreement with the defendant companies. The court, relying upon Supreme Court and Third Circuit EEOC cases, concluded that allowing the Attorney General to move forward with individual restitution claims would undermine the settlement agreement.[11] *Id.* at *8. The court also noted that the Attorney

---

[11] Relatedly, in *New Mexico v. Capital One Bank*, 980 F. Supp. 2d 1346 (2013), the district court "barred [the New Mexico Attorney General] from bringing a claim for compensation on behalf of the consumers who were class members in the [previously settled class] action." *Id.* at 1356. The posture of that case was different than here because the defendants moved to dismiss the Attorney General's claims rather than enjoin them pursuant to the All Writs Act, but the reasoning with respect to privity and preventing a "double recovery" for class members bound by the settlement is the same. *Id.* The court also explicitly noted, "the Tenth Circuit has not yet ruled on the issue of privity between citizens who have already litigated their claims and state agencies which seek to vindicate the citizens' rights in subsequent actions." *Id.* at 1352 n.3. Another Pennsylvania district court noted similar considerations in its approval of a nationwide class action settlement and concluded, "the AGs may continue to bring claims belonging to their respective states, such as state criminal and regulatory actions. However, the AGs are precluded from bringing claims in a de facto or de jure representative capacity on behalf

General could pursue other remedies, including injunctions and civil penalties. *Id.* These considerations are equally present here. As in *American Investors*, the "claims for restitution are in effect post-negotiation 'collateral attacks' on the settlement," which "would undeniably deter similar settlements in the future." *Id*. Moreover, allowing such claims to go forward undermines CAFA by in effect sending the same claims CAFA envisioned as removable back to be "adjudicated in state courts, where the governing rules are applied inconsistently." S. Rep. No. 109-14, at 4 (2005), 2005 WL 627977, at *5.

Our decision does not deprive the State of the ability to protect its citizens—quite the contrary. As explained, *supra*, the State may seek civil penalties and broad injunctive relief against IntelliGender. In addition, CAFA's notification requirement, § 1715, safeguards the State's ability to participate, comment, or object during the Rule 23 class action settlement approval process, fulfilling CAFA's purpose to "provide a check against inequitable settlements." *Uponor*, 716 F.3d at 1064 (quoting the Senate Report on CAFA). Here, IntelliGender provided notice to the appropriate parties, including the Attorney General of the United States and the CAFA coordinator for the Office of the Attorney General of California. Having chosen not to participate, the State is precluded from seeking the same relief sought in the CAFA class action. This is so not because § 1715 imposes any obligation on the State, but by operation of principles of res judicata. Indeed, while § 1715 does not

---

of the plaintiffs in this class action, because doing so would allow Class members to double recover." *Esslinger v. HSBC Bank Nevada, N.A.*, CIV.A. No. 10-3213, 2012 WL 5866074, *7 n.2 (E.D. Pa. Nov. 20, 2012) (internal quotation marks omitted).

impose any obligations, responsibilities, or duties on the State, § 1715(f) also makes clear that it does not "expand the authority of" the State, for example, by excepting the State from longstanding principles of res judicata.

### III.

For the foregoing reasons, we affirm the district court's order denying the injunction of the State's action writ large, but we reverse the district court's order denying the injunction with respect to restitution and enjoin those claims. Each party shall bear its own costs.

**AFFIRMED** in part; **REVERSED** in part.